UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID L. JAMERSON,

                Plaintiff,

                               Case No. 2:22-cv-98

v.

                               Honorable Paul L. Maloney

KRISTOPHER TASKILA et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 10.)

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. *See* Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will drop any putative defendants and claims set forth in Plaintiff's declarations (ECF Nos. 6, 7) that do not relate to the claims regarding his inability to use the telephone that are set forth in his complaint (ECF No. 1).

With regard to Plaintiff's remaining claims, under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*,

504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 4) and motion for a preliminary injunction and temporary restraining order (ECF No. 5).

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Michigan Civil Service Commission Personnel Director Janine M. Winters, MDOC Director Heidi E. Washington, and the following AMF personnel: Warden Kristopher Taskila, Deputy Warden Earnie Petaja, Assistant Deputy Warden Nate Hoffman, Acting Assistant Deputy Warden C. Dums, Resident Unit Manager Lance Miller, Unit Manager Timothy Perttu, Prison Counselor Ronald Niemi, Grievance Coordinator T. Hamel, Case Manager Timothy Wilson, and Corrections Officers Unknown Kinnunen, Unknown Laroux, Unknown Turunen, and Unknown Poyhonen.

In his complaint, Plaintiff alleges that at all relevant times, he has been housed in administrative segregation at AMF. (ECF No. 1, PageID.3.) On October 4, 2021, Plaintiff asked Defendant Kinnunen to use the telephone. (*Id.*) Defendant Kinnunen told him no because he was not at Stage Four. (*Id.*) Plaintiff responded that he was "making a GTL free telephone call." (*Id.*) Defendant Kinnunen told Plaintiff that Defendant Hoffman had sent an email to staff indicating that "segregation prisoners had to be on Stage Four to use the telephone." (*Id.*) Plaintiff told Defendant Perttu that Defendant Kinnunen had not allowed him to use the phone, and Defendant Perttu told Plaintiff that he had to be on Stage Four to have phone privileges. (*Id.*)

The next day, Plaintiff submitted a grievance, which he claims took two weeks to process. (*Id.*) Plaintiff asked Defendant Niemi why it took the Grievance Coordinator so long to process

2

the grievance; Defendant Niemi responded that the Grievance Coordinator "had been off work for a while." (*Id.*) The Step One response stated: "Telephone privileges in the IISP Program are governed by the Incentives in Segregation Manual." (*Id.*)

Plaintiff references MDOC Policy Directive 04.05.120, which provides that prisoners in segregation must receive one 15-minute phone call per week unless he or she is subject to a telephone restriction or disciplinary sanctions. (*Id.*, PageID.4.) Prisoners subject to disciplinary sanctions receive one 15-minue call during their seven-day sanction break. (*Id.*) Plaintiff also indicates that Defendant Washington issued an order during the COVID-19 pandemic, directing that each prisoner would receive one free 10-minute GTL call per week. (*Id.*) Plaintiff claims that Defendants Taskila and Hoffman knew about this order. (*Id.*) He also claims that Defendant Taskila took away his telephone privileges "as a way to punish him and cause mental pain and physical pain." (*Id.*)

Plaintiff avers that he has not been able to participate in the Incentives in Segregation Program because the unit team "refuse[s] to move his stage level up when other prisoners' stage is moved up." (*Id.*) Plaintiff claims that the housing unit team is discriminating against him "for no other reason than to punish him to cause harm." (*Id.*, PageID.5.) He also alleges that Defendant Kinnunen denied him use of the telephone to retaliate against him for filing grievances. (*Id.*)

Plaintiff claims that on October 25, 2021, Defendant Miller issued a fraudulent Notice of Intent to Conduct an Administrative Hearing, noting that Plaintiff had made four phone calls since the beginning of the month. (*Id.*, PageID.6.) The Notice indicated that Plaintiff was at Stage Two and not permitted to make any phone calls. (*Id.*) That same day, Plaintiff was subjected to a temporary phone restriction, to end 30 days later, on November 24, 2021. (*Id.*)

3

On November 1, 2021, Plaintiff asked Defendant Miller, both orally and in writing, to use the telephone. (*Id.*, PageID.5.) Defendant Miller told Plaintiff that he could not use the phone unless he was on Stage Four. (*Id.*) Plaintiff responded that the Incentives Program Manual did not include the free call from GTL. (*Id.*)

On November 8, 2021, Plaintiff asked Defendant Niemi about the telephone restriction. (*Id.*, PageID.7.) Defendant Niemi told Plaintiff that "GTL [does not] have to know that AMF is making the free call as [an] incentive in the Incentives in Segregation Program." (*Id.*) Two days later, Plaintiff asked Defendant Niemi to use the telephone; Defendant Niemi told him that he could not because he was not on Stage Four. (*Id.*) Plaintiff told Defendant Niemi that he would be filing a grievance. (*Id.*)

Two days later, Plaintiff asked Defendant Niemi how Defendant Hoffman got the authority to make the free phone calls an incentive "without providing a notice to the prisoners that they would have to earn the one free, 10-minute call per week, per prisoner." (*Id.*) Plaintiff told Defendant Niemi that the MDOC had not provided due process by merging the free calls provided by GTL into the Incentives Program. (*Id.*)

On November 27, 2021, Plaintiff asked Defendant Laroux to use the phone. (*Id.*) Plaintiff wanted to use the phone because it was his birthday and he wanted to call his family. (*Id.*, PageID.8.) Defendant Laroux told Plaintiff that he could not use the phone because he was not on Stage Four. (*Id.*, PageID.7.)

On January 28, 2021, Defendant Poyhonen was passing out lunch trays when Plaintiff asked if he could use the phone. (*Id.*, PageID.8.) Two hours later, Plaintiff asked Defendant Poyhonen to use the phone again. (*Id.*) Defendant Poyhonen did not respond. (*Id.*) Subsequently, Defendant Poyhonen came back with the phone and told Plaintiff to "say please." (*Id.*) Plaintiff

told Defendant Poyhonen to give him the phone; Defendant Poyhonen left without letting Plaintiff use the phone. (*Id.*) Plaintiff told Defendant Perttu about the incident. (*Id.*)

Two days later, Plaintiff asked Defendant Poyhonen to use the telephone. (*Id.*, PageID.9.) Defendant Poyhonen told Plaintiff to say please. (*Id.*) Plaintiff reported the incident to Defendant Perttu; Defendant Perttu told Plaintiff "to say please" if he wanted to use the phone. (*Id.*) Plaintiff claims that Defendant Poyhonen was retaliating against him for writing grievances. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.11–14.) Plaintiff also contends that Defendants Taskila and Hoffman conspired to violate his rights. (*Id.*, PageID.13.) Plaintiff seeks declaratory relief, as well as several forms of injunctive relief. (*Id.*, PageID.15-16.) He also requests compensatory and punitive damages. (*Id.*, PageID.16–17.)

Plaintiff has also filed a motion to appoint counsel (ECF No. 4), motion for a preliminary injunction and temporary restraining order (ECF No. 5), and two declarations (ECF Nos. 6, 7). In his first declaration, Plaintiff reiterates his allegations concerning his inability to use the phone. (ECF No. 6, PageID.140–43.) Plaintiff, however, then extends beyond the scope of his complaint to raise numerous complaints about conditions in segregation. For example, he avers that staff "have been constantly depriving him of basic necessities like soap, writing paper, disinfectant[,] and bleach." (*Id.*, PageID.143.) He complains about a lack of yard time and an inability to order from the store. (*Id.*, PageID.143–44.) Plaintiff argues that the unit manager and case manager "never announce a warning before they make legal mail rounds to pick up mail from prisoners on the wings." (*Id.*, PageID.144.) He also faults them for not making announcements before showers and yard escorts start. (*Id.*) Plaintiff further complains about the lack of cleaning supplies, the adequacy of the shoes provided, and the meals. (*Id.*, PageID.145.) He avers that the criminal justice

system is at fault for "sentencing prisoners to serve multiple prison terms for one offense." (*Id.*, PageID.146.) Finally, he suggests that Correctional Officer Haataja (not a party) sexually harasses him during rounds. (*Id.*, PageID.146–47.) In his second declaration, Plaintiff reiterates his complaints about the meals and sets forth a list of specific items that he wishes to be added to the segregation store list. (ECF No. 7.)

## II.   Misjoinder

With respect to the joinder of parties and claims in a single lawsuit, Federal Rule of Civil Procedure 20(a) limits the joinder of parties, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Specifically, Rule 20(a)(1) governs when multiple plaintiffs may be joined in one action: "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

6

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)). "[T]he policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Boretsky v. Corzine*, No. 08-2265 (GEB), 2008 WL 2512916, at *4 (D.N.J June 23, 2008) (citations omitted). Furthermore, Rule 20 does not permit a plaintiff to "incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues." *Lovelace v. Lee*, No. 7:03-cv-395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that

were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that prisoners like Plaintiffs may not join in one complaint all of the defendants against whom they may have a claim, unless they satisfy the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Here, as set forth above, Plaintiff's complaint asserts numerous alleged constitutional violations arising from Defendants' refusal to allow him to use the phone. Plaintiff's declarations, however, extend beyond the scope of those claims, raising several complaints concerning conditions in segregation and alleging that Corrections Officer Haataja, who has not been named as a Defendant in the complaint, has sexually harassed Plaintiff during rounds. Plaintiff mentions that the unit manager and case manager are involved with these conditions, but does not specifically indicate that Defendants Perttu and Wilson are the unit manager and case manager involved. The only connection between the claims asserted in Plaintiff's complaint and the additional claims asserted in his declarations are that they have occurred in the segregation unit at AMF. These additional facts and putative defendants are not transactionally related to the claims set forth in Plaintiff's complaint. The fact that all of these occurrences happened in segregation does not automatically grant Plaintiff leave to join unrelated claims together. Allowing Plaintiff to

raise all of these claims in one lawsuit would allow him to circumvent the PLRA's filing fee restrictions and allow him to avoid having to incur a "strike" for purposes of § 1915(g).

Because the Court has concluded that Plaintiff has improperly joined claims and putative defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely

claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action

11

was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's declarations do not set forth a timeframe but appear to suggest conduct that recently occurred or is still occurring. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file a new complaint raising his additional claims, and he will not suffer gratuitous harm if these additional claims and putative defendants are dismissed.

The Court, therefore, will exercise its discretion under Rule 21 and drop Plaintiff's additional claims and putative defendants, including Correctional Officer Haataja, regarding conditions in segregation that are not related to Plaintiff's inability to use the phone. These claims and putative defendants will be dismissed without prejudice to the institution of a new, separate lawsuit. If Plaintiff wishes to proceed with his dismissed claims, he shall do so by filing a new civil action on the forms provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.

## III.     Plaintiff's Motions

### A.     Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (ECF No. 4.) He contends that counsel is needed because he has limited access to the law library and limited knowledge of the law. (*Id.*, PageID.131.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel. (ECF No. 4.)

**B.      Motion for a Preliminary Injunction and Temporary Restraining Order**

Plaintiff has also filed a motion for a preliminary injunction and temporary restraining order. (ECF No. 5.) Plaintiff seeks to enjoin Defendants from refusing him phone privileges. (*Id.*, PageID.135.) He also seeks numerous other forms of injunctive relief, such as release from segregation, the right to place store orders, the addition of healthy items on the segregation store list, announcements of legal mail rounds, better shoes, and the hiring of cooks that are "skilled at both baking biscuits and pastries, to cooking meat and vegetables." (*Id.*, PageID.135–36.)

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)). As discussed *supra*, all of the additional claims Plaintiff raises in his declarations beyond his claims concerning refusal of the phones will be dismissed without prejudice as misjoined. Moreover, as set forth herein, the Court concludes that Plaintiff's complaint is properly dismissed. The Court, therefore, will deny Plaintiff's motion for a preliminary injunction and temporary restraining order. *See Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

IV.    **Failure To State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994). As noted above, Plaintiff asserts First, Eighth, and Fourteenth Amendment claims premised upon Defendants' denial of phone access. He also suggests that Defendants Taskila and Hoffman conspired to violate his constitutional rights.

### A.    First Amendment Claims

#### 1.    Right to Speech and Association

Plaintiff avers that Defendants violated his First Amendment rights to "freedom of speech and association" by refusing him phone access. (ECF No. 1, PageID.11–14.) The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (en banc).

Prisoners do have a right to "reasonable" access to the telephone. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). However, the restrictions about which Plaintiff complains did not completely deprive him of access with the outside world. *Cf. Almahdi v. Ashcroft*, 310 F. App'x 519 (3d Cir. 2009) (holding that restriction of prisoner's telephone access to one phone call per month did not violate the First Amendment); *Miles v. Scanlon*, No. 1:21-cv-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (noting that inmates "do not have a constitutional right to a particular form of communication"); *Dallas v. Chippewa Corr. Facility*, No. 2:17-cv-198, 2018 WL 3829203, at *6 (W.D. Mich. Aug. 13, 2018) (dismissing prisoner's First Amendment claim premised upon a "refusal to allow him to use a phone every thirty days while on a break from

sanctions"). Plaintiff's complaint fails to plausibly allege a violation of his First Amendment right to free speech and association. At no time does he allege that he was completely cut off from communication with the outside world. Rather, Plaintiff takes issue with limitations placed upon use of the telephones in the segregation unit. Plaintiff's First Amendment free speech/association claim will, therefore, be dismissed.

### 2. Retaliation

Plaintiff also alleges that Defendants intended to punish him for filing grievances by refusing him access to the phone, claiming this is unconstitutional retaliation. (ECF No. 1, PageID.11–14.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)

16

(discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, a loss of privileges, which includes loss of the right to use the phone, amounts to adverse action. *See Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill*, 630 F.3d at 474). Nevertheless, Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to suggest that Defendants were aware of his grievances and denied him access to the phone in retaliation for his protected activity. Plaintiff's conclusory and speculative allegations clearly fail to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's retaliation claims will, therefore, be dismissed.

### B.      Eighth Amendment Claims

Plaintiff suggests that Defendants' refusal to allow him to use the phone violates his Eighth Amendment rights. (ECF No. 1, PageID.11–12.) According to Plaintiff, he has sustained "pain, anxiety, emotional distress, and suffering" from being refused phone access.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff simply does not allege facts rising to the level of an Eighth Amendment violation. Nothing in his complaint leads the Court to conclude that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Limitations on phone privileges, while unpleasant, do not amount to a denial of basic human needs. *See Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *5 (W.D. Mich. Mar. 3, 2021) (collecting cases). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Hardin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Plaintiff's allegations fall well short of meeting the objective prong of the Eighth Amendment standard. His Eighth Amendment claims against Defendants will, therefore, be dismissed.

### C.    Fourteenth Amendment Claims

#### 1.    Due Process

Plaintiff also contends that Defendants violated his Fourteenth Amendment due process rights by denying him use of the phone. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the

19

State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the Court, a prisoner is entitled to the protections of due process only when the change in conditions "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff vaguely suggests that Defendants' actions violate MDOC policy regarding phone access in segregation. Courts, however, routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992). Moreover, Plaintiff's claim that his Fourteenth Amendment rights were violated because he could not access the phones as freely as he would like lacks merit. *See, e.g.*, *Dallas*, 2018 WL 3829203, at *6; *Anderson v. Barrows*, No. 2:19-cv-3631, 2019 WL 4451536, at *2 (S.D. Ohio Sept. 17, 2019) (dismissing plaintiff's due process claim premised upon "his inability to access a phone to call his family"); *Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL 2952929, at *5 (W.D. Mich. July 11, 2017) (90-day phone restriction did not implicate a liberty interest); *Johnson v.*

*Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (6-month restriction on telephone privileges does not amount to an atypical or significant hardship that would trigger due process protections); *Adorno v. Semple*, No. 3:16-cv-325, 2016 WL 7469709, at *7 (D. Conn. Dec. 28, 2016) (concluding that "any Fourteenth Amendment claim based on an inability to make a telephone call is without merit"). Plaintiff's inability to use the phones as often as he would like simply does not reach the level of an atypical and significant hardship sufficient to trigger his due process rights. His due process claims will, therefore, be dismissed.

### 2.    Equal Protection

Plaintiff also contends that Defendants violated his Fourteenth Amendment equal protection rights because others who were similarly situated were able to use the phone. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's allegations neither implicate a fundamental right nor state that he is a member of a suspect class. Plaintiff instead appears to contend that he has been treated differently from others similarly situated without any rational basis for the difference.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see*

21

also *Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006))). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff fails to allege any facts to demonstrate that comparators were similar in all relevant aspects. Plaintiff offers only a statement that other prisoners who were "similarly situated" got to use the phones. Plaintiff's own allegations, however, suggest that only inmates at Stage Four of

22

the incentives program were permitted to use the phones, and that Plaintiff himself was at Stage Two. Plaintiff's complaint is entirely devoid of facts suggesting that other Stage Two inmates were permitted to use the phones. Plaintiff's conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Because Plaintiff has not alleged facts that support an inference that Defendants treated him disparately as compared to others similarly situated, he cannot maintain an equal protection claim premised upon Defendants' denial of phone privileges. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

## D.     Civil Conspiracy Claim

Plaintiff suggests that Defendants Taskila and Hoffman conspired to create "an illegal policy and custom" to violate Plaintiff's constitutional rights. (ECF No. 1, PageID.13.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

23

Plaintiff provides no allegations regarding any agreement between Defendants Taskila and Hoffman, beyond the fact that they both work at AMF for the MDOC. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege an agreement among Defendants to violate his constitutional rights, Plaintiff fails to state a plausible claim of conspiracy.

Moreover, a plaintiff "cannot succeed on a conspiracy claim [when] there was no underlying constitutional violation that injured [the plaintiff]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (citing *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007)). As thoroughly discussed above, Plaintiff fails to set forth First, Eighth, and Fourteenth Amendment claims against Defendants regarding the denial of the right to use the phone. As such, Plaintiff cannot maintain a plausible conspiracy claim against Defendants Taskila and Hoffman.

## Conclusion

Having reviewed the complaint as well as Plaintiff's declarations under Rules 18 and 20 of the Federal Rules of Civil Procedure, the Court will drop any putative defendants and claims set forth in Plaintiff's declarations (ECF Nos. 6, 7) that do not relate to the claims regarding his inability to use the telephone that are set forth in his complaint (ECF No. 1).

Having further conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny

24

Plaintiff's motion to appoint counsel (ECF No. 4) and Plaintiff's motion for a preliminary injunction and temporary restraining order (ECF No. 5).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   June 1, 2022                          /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge